UNITED STATES of America, Plaintiff–Appellee,

v.

Stevie STEVENSON, Defendant–Appellant.

No. 91–3431.

United States Court of Appeals, Seventh Circuit.

Argued April 26, 1993.

Decided Oct. 6, 1993.

Ranley R. Killian, Jr. (argued), Office of the U.S. Atty., Crim. Div., Fairview Heights, IL, for plaintiff-appellee.

William J. Conroy, Jr. (argued), Cantrall, IL, for defendant-appellant.

Before CUDAHY and EASTERBROOK, Circuit Judges, and EISELE, Senior District Judge.*

EISELE, Senior District Judge.

## FACTS

After becoming suspicious of packages being delivered to 1011 N. Bridge Street in Carbondale, Illinois, postal inspectors exposed one such parcel to a narcotics trained canine. The dog reacted in a way suggesting the presence of a narcotics odor. The package was then seized and later opened pursuant to a federal search warrant. Within the package, among several other things, was a box of Tide laundry detergent that contained a plastic bag of cocaine. Approximately 30 grams of cocaine were replaced in the package along with a transmitter which would emit a signal when the contents of the package were removed. The approximately 213 grams remaining were held in custody by the government.

A controlled delivery was set up and the package was taken to 1011 N. Bridge Street. The package was not addressed to the defendant but he signed the name of the addressee (Dana Crushane). Shortly thereafter, Louis Britton, a minor and the appellant's nephew, was observed carrying the same unopened package to his home located at 404 W. Willow Street. After Britton arrived at the Willow Street house, the appellant followed. Upon arriving, the appellant went upstairs to the package and opened it and the Tide box. At this point, the government agents converged upon the house and arrested the appellant as he attempted to flee. The appellant identified himself as Ricky Cummings at the time of arrest.

A plea agreement was abandoned by the appellant and, following a jury trial, he was convicted of knowingly and intentionally attempting to possess with the intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846. He was additionally

---

* Hon. G. Thomas Eisele of the Eastern District of Arkansas, sitting by designation.

found guilty of 21 U.S.C. § 845(b)(2): that the defendant did knowingly and intentionally employ, hire, use, persuade, induce, entice, coerce a person under the age of eighteen (18) to assist in avoiding detection and apprehension of a violation of a crime. The appellant was sentenced to a term of ninety-seven (97) months, followed by a six year term of supervised release, based upon an adjusted base offense level of 30. The appellant's base offense level of 26 for a violation of 21 U.S.C. § 845(b)(2) was adjusted upward two levels for obstruction of justice and a further two levels for his leadership role.

## ISSUES

Appellant raises a variety of issues on appeal. The issues can be broadly grouped into three categories: pretrial issues, questions raised during the trial, and issues related to the proper application of the sentencing guidelines to the facts of this case. These issues will be addressed in that order.

## I. PRE-TRIAL ISSUES

### A. Denial of Motion for Continuance

■ A plea agreement was aborted by the appellant and trial was scheduled to commence two days later. The appellant moved for a continuance which was denied. Asserting error in the denial, the appellant contends that "[i]t was counsel's reliance upon the plea agreement's integrity, signed by the parties, that caused him to spend his limited time preparing other cases assigned to him as public defender." Reply Brief of Appellant at 1. *United States v. Stevenson*, (7th Cir.1993) (No. 91–3431). Counsel for the appellant further states that public defenders "need to be able to rely on a defendant's assertion that he will actually plead guilty pursuant to an agreement that he has signed." *Id.* Counsel's argument is with his client, not with the district court. A defendant who repudiates a plea agreement at the last moment should blame himself for any time pressure occasioned thereby. In any

event, if a plea agreement fails, the already set, impending court date should not come as a surprise. It was unreasonable for appellant's counsel to assume the case would not go to trial or to expect a continuance if the plea agreement was aborted. At the pretrial conference, the trial date was set two months in advance. The case was not unusual or of such complexity that it would warrant additional time for trial preparation.

■ "[B]road discretion must be granted trial courts on matters of continuances." *Morris v. Slappy*, 461 U.S. 1, 11, 103 S.Ct. 1610, 1616, 75 L.Ed.2d 610 (1983). "Because of the broad-ranging, almost standardless discretion that a trial court must exercise in scheduling trials, the grant or denial of a continuance is subject to appellate review only for an abuse of discretion." *United States v. Rodgers*, 755 F.2d 533, 539 (7th Cir.1985) (*citing Morris v. Slappy*, 461 U.S. 1, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983)). The trial court is inevitably in a better position than an appellate court to evaluate the need and justification of additional time, as well as the burden the rescheduling may have on the court's docket. "Thus, ordinarily the refusal of the trial court to grant a continuance is virtually unreviewable." *United States v. Davis*, 604 F.2d 474, 480 (7th Cir.1979). There is no indication that the trial court abused its discretion or that its decision was arbitrary or capricious.

### B. Voir Dire as to Racial Prejudice

■ The appellant argues that remarks referencing race by prospective jurors should have caused the trial court to voir dire the remaining panel as to racial prejudice.[1] It is noted that we are not here dealing with an interracial crime and there were present no special circumstances suggesting that race was a factor. Furthermore neither party requested the Court to inquire concerning possible racial prejudice.

Rule 24(a) gives the court very broad discretion to conduct the voir dire examination of prospective jurors. The rule states that

---

1. Defendant argues that because a prospective juror, who was not seated, stated that her husband, a black police officer, was being charged with possession of cocaine, and another prospective juror stated that blacks had broken into her son's car, the trial court should have questioned the entire panel about possible racial prejudice.

the court "itself [may] conduct the examination ... [and in that] event ... shall permit the defendant or the defendant's attorney ... to supplement the examination by such further inquiry as it deems proper." F.R.Cr.P. 24(a). The appellant's failure to request inquiries into the matter or to object to the voir dire questioning or procedure waives that right on appeal. This principle, that a party must make known to the trial court what he objects to and the reasons for the objections, is applied most often to rulings on evidence and claims of improper argument by the prosecutor, but it applies as well to many other kinds of rulings by the trial court. *See* Charles A. Wright, *Federal Practice and Procedure* Vol. 3A, § 842 (2d ed. 1982). *See also* F.R.Cr.P. 51.

The Supreme Court, addressing questions to the prospective jury concerning racial prejudice, has stated: "In our judgment, it is usually best to allow the defendant to resolve ... whether or not he would prefer to have the inquiry into racial or ethnic prejudice pursued." *Rosales–Lopez v. United States,* 451 U.S. 182, 191, 101 S.Ct. 1629, 1636, 68 L.Ed.2d 22 (1981). The Court further stated that reversible error would occur only where the trial judge failed to honor the request for the racial inquiry *and* when the circumstances of the case indicated a reasonable possibility that racial prejudice might have influenced the jury. *Id.* The appellant established neither prong of the required test.

## II. TRIAL ISSUES

### A. Ineffective Assistance of Counsel

The appellant argues the proposition of accumulated error in an attempt to prove ineffective assistance of counsel. He cites perceived errors in the voir dire, surprise witnesses, and various failures to object during testimony and during the prosecution's closing argument.

Hindsight, as the saying goes, is 20–20. Recognizing this reality, the Supreme Court has stated that an appellate "court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed at the time of counsel's conduct." *Strickland v. Washington,* 466 U.S. 668, 690, 104 S.Ct. 2052, 2066, 80 L.Ed.2d 674 (1984). The proper standard for reviewing attorney conduct or performance is that of reasonably effective assistance. *Id.* at 687, 104 S.Ct. at 2064. There is a strong presumption that an attorney representing a defendant has "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690, 104 S.Ct. at 2066. In fact, to obtain a reversal of conviction based on ineffective assistance of counsel the appellant must meet the heavy burden of proving (1) "that counsel's representation fell below an objective standard of reasonableness" as measured by prevailing professional norms, and (2) that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 688, 694, 104 S.Ct. at 2064, 2068.

The errors appellant alleges fail both prongs of this test. There is nothing in the record to suggest that counsel for the appellant failed to make the adversarial testing process work in this particular case.

### B. Admission of Expert Testimony

■ The appellant argues that the opinion testimony offered by DEA agent Carter was irrelevant and without adequate factual foundation.[2] The admissibility of expert testimony is governed by Fed.R.Evid. 702. There are two requirements that expert testimony must meet in order to be admissible: (1) the expert must be qualified; and (2) the subject matter of the expert's testimony must be suitable, that is, consist of specialized knowledge that will be helpful or essential to the jury in deciding the case correctly. Most of the time, as in this case, the way an expert helps the trier of fact is by furnishing an opinion about inferences that should be drawn from a set of complex facts that the trier might not otherwise be capable of inter-

2. An agent testified that the amount of 255 grams would be considered a "distribution amount." There was some confusion in the testimony as to the exact amount of cocaine ranging from 113 grams to 255 grams. An agent also testified that possession of 30 grams would be indication of an intent to distribute.

preting easily and correctly. Although the agents' opinions were probably helpful here, reasonable jurors could draw their own inferences from the drug amounts involved.

■ The DEA agent was a qualified expert witness. He had knowledge of a particular area—the selling price of cocaine—that distinguished him from an ordinary person. His expertise came from experience, education, and training; all acceptable bases of expertise under Rule 702. *See United States v. Johnson*, 575 F.2d 1347 (5th Cir. 1978); Michael H. Graham, *Federal Practice and Procedure*, Interim Vol., § 6641 (1992). A court has wide discretion in determining the competency of a witness as an expert and the relevancy of his testimony with respect to a particular subject. The district court's decision will be overturned on appeal only if manifestly erroneous. *United States v. Solis*, 923 F.2d 548, 550 (7th Cir.1991); *Wood v. Stihl, Inc.*, 705 F.2d 1101, 1109 (9th Cir. 1983); *Garbincius v. Boston Edison Co.*, 621 F.2d 1171, 1174 (1st Cir.1980); *United States v. Brown*, 776 F.2d 397, 400 (2nd Cir.1985). The admission of the expert testimony was not an abuse of discretion.

## C. Improper Reference to Exercise of Miranda Rights and Denial of a Fair Trial

The appellant asserts that the defendant's Fifth and Fourteenth Amendment rights were violated because the defendant elected to exercise his *Miranda* right to remain silent following his arrest and this fact was mentioned during the testimony of postal inspector Hearn.[3] This argument is without merit. The appellant did not remain silent. He made no statement directly to Inspector Hearn. Trial Transcript at 76. The appellant, however, did make a statement at the time of arrest to law enforcement officers. He told Deputy Sheriff Webb, while still at the Willow Street house, that his name was Ricky Cummings and that he was a student. The appellant further told Deputy Webb that the Datsun 300 ZX in the front yard belonged to his cousin Stevie Stevenson.

■ Contentions by the appellant that he did not receive a fair trial here because of prejudicial comments made by a government witness concerning other charges he faced and because of comments made by the prosecution during closing are not grounds for reversal. Defense counsel did not object to the statements at trial and the district judge did not see the need for a limiting instruction.

■ The failure to make a timely objection to alleged errors in jury instructions results in a waiver of those objections unless, on appeal, the error is determined to be so fundamental as to cause a miscarriage of justice. *United States v. McNeese*, 901 F.2d 585, 608 (7th Cir.1990); *United States v. Requarth*, 847 F.2d 1249, 1252–54 (7th Cir. 1988). *See also* F.R.Cr.P. 52(b) and Fed. R.Evid. 103(d). When a defendant has failed to preserve an issue for appeal by an objection, an appellate court may review the alleged error only under the "plain error" doctrine. *McNeese*, 901 F.2d at 608; *Requarth*, 847 F.2d at 1254. This result follows directly from F.R.Cr.P. 30 which in part provides:

> No party may assign as error any portion of the charge unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which that party objects and the grounds for the objection.

■ The errors complained of by the appellant do not rise to the level of plain error, as expressed in those rules. The Supreme Court has described plain errors as those errors that "seriously affect the fairness, integrity or public reputation of judicial proceedings." *United States v. Young*, 470 U.S. 1, 7, 15, 105 S.Ct. 1038, 1042, 1046, 84 L.Ed.2d 1 (1985) (referring to the codification of *United States v. Atkinson*, 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1936) in F.R.Cr.P. 52(b)). The Court is attempting to balance the need for a fair and accurate trial the first time around against redressing obvious injustices. The plain error exception to the contemporaneous objection rule is to be

---

3. Hearn was asked whether the defendant gave a statement when arrested. He replied, "Not at that time he did not." This was a true response and reflected the officer's knowledge that the defendant did make relevant statements to other law enforcement officers.

"used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result." *United States v. Frady*, 456 U.S. 152, 163, n. 14, 102 S.Ct. 1584, 1592, n. 14, 71 L.Ed.2d 816 (1982). The plain error rule authorizes the Courts of Appeals to correct only particularly egregious errors. *United States v. Young*, 470 U.S. 1, 15, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985).

The Court held in *United States v. Socony–Vacuum Oil Co.*, 310 U.S. 150, 238–39, 60 S.Ct. 811, 851, 84 L.Ed. 1129 (1940) that "counsel for the defendant cannot as a rule remain silent, interpose no objections, and after a verdict has been returned, seize for the first time on the point that [the prosecutor's] comments to the jury were improper and prejudicial."

■ Reviewing courts can only address plain error by evaluating such a claim against the entire record. "[A]ppellate courts [must] relive the whole trial . . . and not . . . extract from episodes in isolation abstract questions of evidence and procedure. To turn a criminal trial into a quest for error no more promotes the ends of justice than to acquiesce in low standards of criminal prosecution." *United States v. Young*, 470 U.S. at 16, 105 S.Ct. at 1047 (*quoting Johnson v. United States*, 318 U.S. 189, 202, 63 S.Ct. 549, 555, 87 L.Ed. 704 (1943) (Frankfurter, J., concurring)).

The errors that the appellant complains of were not egregious and do not rise to the level of plain error.

### D. Instructing the Jury

The appellant asserts error in the trial court's instruction of the jury because he believes the instructions permitted the jury to convict based on intent to "distribute some unspecified amount, that he currently did not possess, at some unspecified time in the past." Brief of Appellant at 26, *United States v. Stevenson* (7th Cir.1993) (No. 91–3431). Further, the appellant contends that there was error in the instructions because, under the instructions given, the jury could convict even though there was a discrepancy between the quantity of drugs described in the charges and the amounts actually proven at trial.

Even assuming there was not waiver of the error for failure to object (*see* Part II(c): discussion waiver of error because of failure to object), the appellant's argument fails. The Seventh Circuit pattern instruction given by the Court below concerning the elements of the crime was proper. Quantity is not an element of the crime specified in 21 U.S.C. §§ 841, 846. The quantity found potentially affects sentencing but not the determination of guilt.

### E. Insufficient Evidence

The appellant argues that there was insufficient evidence for the jury to conclude that the appellant had knowledge of the fact that cocaine was contained in the postal package, that appellant had the intent to distribute, and that the appellant employed or used a minor to assist him in avoiding apprehension.

■ The proper test for evaluating a sufficiency of the evidence claim by a defendant is for the appellate court to "review the evidence in a light most favorable to the government and [the court] will reverse a conviction only if no rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt." *United States v. Cochran*, 955 F.2d 1116, 1121–22 (7th Cir.1992).

■ The essential elements of the drug offenses charged are that the appellant attempted to possess with the intent to distribute cocaine and that he did so knowingly and intentionally. A rational jury could have found the requisite knowledge and intent based on the following evidence presented by the government: (1) the day before a package containing approximately 243 grams of cocaine was mailed from California, a wire transfer for $7400.00 was sent to California and the receipt therefor was found in the defendant's car; (2) the value of 250 grams (¼ kilogram) was estimated to be $5500 to $8500, depending upon the source; (3) the appellant arranged to have parcels sent to an address other than his own; (4) the parcel containing the cocaine was sent to the address just described; (5) the appellant signed

for the package though it was not addressed to him; (6) the package was taken to another address by the appellant's nephew; (7) the appellant followed and opened the package upon arriving at the second address; (8) the appellant opened the Tide box that originally contained the cocaine; and (9) the quantity of cocaine found suggested a distribution according to an expert witness.

■ Despite the testimony of the minor, a rational trier of fact could have found that the appellant knowingly and intentionally employed or used a minor to avoid apprehension. This is supported by the following: (1) The minor was related to the defendant; (2) the package was given to the minor by the appellant to transport to a second location; (3) the minor did, in fact, transport the cocaine; (4) the minor informed the appellant, upon the appellant's arrival at the minor's home, that the package was upstairs; and (5) the minor served as a lookout downstairs, yelling "It's the police" when the government agents converged on the house.

## III. SENTENCING ISSUES

### A. Base Offense Level

The appellant points to the discrepancy between the quantity of cocaine described in the government's Exhibit 14–A (the lab report) and the testimony of the forensic chemist who prepared the report. The lab report stated the amounts contained in the government's Exhibits DC–1 and DC1–A were 213.69 and 29.57 grams, respectively. However, during testimony, with the report in hand, the chemist stated that Exhibit DC–1 contained 113.69 grams.

The appellant was not convicted of distributing a specific amount of cocaine, since quantity is not an element of the offense. As a result, there was no finding by a trier of fact that the disputed quantity was either 213 grams or 113 grams. The discrepancy in the appellant's case, however, is irrelevant for sentencing purposes because the conviction for 21 U.S.C. § 845(b)(2) carries a base offense of 26, which is higher than the base offense level for either quantity of cocaine.

### B. Obstruction of Justice Adjustment

The appellant asserts the 2 level upward adjustment for obstruction was improper because under Illinois law, an individual may lawfully change his name without resorting to any legal proceeding. The appellant cites *Thomas v. Thomas,* 100 Ill.App.3d 1080, 56 Ill.Dec. 604, 427 N.E.2d 1009 (1981) and *Reinken v. Reinken,* 351 Ill. 409, 184 N.E. 639 (1933) for the proposition that such a name change will constitute his legal name as much as if he had borne it from birth and thus the appellant did not obstruct justice when he told law enforcement officers that his name was Ricky Cummings, instead of Stevie Stevenson.

■ We do not have to address this novel idea because the appellant did more than state his name. He also told Deputy Sheriff Webb that the automobile in the front yard of the house searched belonged to his cousin Stevie Stevenson. This statement was an attempt to mislead. It directly implied that Stevenson and Cummings were not the same person and that another person owned the automobile. So, while the appellant did not cause the government to expend great resources pursuing a false lead, he nonetheless attempted to obstruct justice and did in fact impede the investigation. Such conduct is sufficient for an upward adjustment pursuant to Guideline § 3C1.1 which states that an adjustment is appropriate for *attempting* to obstruct or impede an investigation. Therefore, no finding of actual prejudice to the government is required. *See United States v. Gaddy,* 909 F.2d 196 (7th Cir.1990); *United States v. Blackman,* 904 F.2d 1250 (8th Cir.1990); *United States v. Patterson,* 890 F.2d 69 (8th Cir.1989).

### C. Leadership Role Adjustment

The appellant also received a two level upward adjustment pursuant to Guideline § 3B1.1 for being an organizer, leader, manager, or supervisor. The introductory commentary to § 3B1.1 says that the guideline may apply whenever "an offense is committed by more than one participant." However, the Application Notes to the Commentary to § 3B1.1 further states the "[a] person who is not criminally responsible for the commis-

sion of the offense is not a participant." This is an important point when looking over the cast of characters in this case. The appellant did arrange to have his mail delivered to Sharyl Branch's home, but there is no indication that she was a "participant." Likewise, there is no evidence concerning the source of the cocaine that would suggest a leadership adjustment would be appropriate for the appellant's relationship with that source. That leaves only the minor. At the sentencing hearing, the district judge enhanced the appellant's sentence two points because "the fact that the jury found [the appellant] guilty on the count involving a minor to me is sufficient to warrant the adjustment of two points." Sentencing Transcript at 40.

 The two level adjustment for leadership, under these circumstances, is inappropriate for two reasons. First, the crime of conviction already encompasses the concept of "leadership." To "employ, hire, persuade, or induce" a minor to participate in a crime in an effort to avoid detection of that crime naturally places the employer in a control role. But to sentence the appellant based upon both recruiting a minor and for the appellant's leadership role is "double counting." His sentence is being enhanced based upon the same elements that resulted in his offense of conviction. Such a result defeats the purpose of adjustments: providing for increased responsibility beyond that reflected in the offense of conviction. The appellant's offense of conviction, however, reflects an inherent control or leadership role. Thus an enhancement pursuant to § 3B1.1 misapplies the guidelines. The closest analogy to this rationale is found in the Commentary to the Obstruction Guideline, § 3C1.1. Application Note 6 says that when a defendant is convicted of an offense, such as perjury, that an obstruction adjustment pursuant to § 3C1.1 should not be applied to that offense unless there is further obstruction that occurs later. The appellant has been subjected to that same treatment. He has been penalized twice for the same conduct.

 The second reason that the leadership adjustment is improper is that the adjustment requires an offense that has been committed by more than one participant.

*See* Guideline § 3B1.1, Introductory Commentary. A participant is defined in the Application Notes as "a person who is criminally responsible for the commission of *the* offense" (emphasis supplied). There is insufficient evidence to suggest that the minor was criminally responsible. Sufficient evidence of the minor's knowledge or intent to commit the offense (distribution of cocaine) is not found in the record. As a result, only one participant remains—the appellant. The leadership adjustment does not apply when there is a single criminally responsible participant.

THEREFORE, for the reasons stated herein, the appellant's conviction is AFFIRMED. The upward adjustment for the appellant's leadership role is reversed and the case is REMANDED to the district court for resentencing, consistent with this opinion.