*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 05a0230p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee/*
*Cross-Appellant,*

*v.*

BOBBY GIBSON (03-6592/6595; 04-5031), ANDREW
S. HICKERSON (03-6595; 04-5037), WILLIAM R.
MALLICOAT (03-6593/6595; 04-5033), KENNETH
TUCKER (03-6595; 04-5035/5036), and
KENAMERICAN RESOURCES, INC. (03-6594/6595;
04-5034),

*Defendants-Appellants/*
*Cross-Appellees.*

Nos. 03-6592/6593/6594/6595;
04-5031/5033/5034/5035/5036/
5037

Appeal from the United States District Court
for the Western District of Kentucky at Owensboro.
No. 02-00018—Joseph H. McKinley, Jr., District Judge.

Argued: April 20, 2005

Decided and Filed: May 24, 2005

Before: SUHRHEINRICH and GILMAN, Circuit Judges; ACKERMAN, District Judge.[*]

---

## COUNSEL

**ARGUED:** R. Kent Westberry, LANDRUM & SHOUSE, Louisville, Kentucky, Allen W. Holbrook, SULLIVAN, MOUNTJOY, STAINBACK & MILLER, Owensboro, Kentucky, R. Kenyon Meyer, DINSMORE & SHOHL, Louisville, Kentucky, Charles E. Ricketts, Jr., RICKETTS & PLATT, Louisville, Kentucky, for Defendants. Terry M. Cushing, ASSISTANT UNITED STATES ATTORNEY, Louisville, Kentucky, for Plaintiff. **ON BRIEF:** R. Kent Westberry, Caroline P. Clark, LANDRUM & SHOUSE, Louisville, Kentucky, Allen W. Holbrook, SULLIVAN, MOUNTJOY, STAINBACK & MILLER, Owensboro, Kentucky, R. Kenyon Meyer, DINSMORE & SHOHL, Louisville, Kentucky, Charles E. Ricketts, Jr., RICKETTS & PLATT, Louisville, Kentucky, John E. Jevicky, DINSMORE & SHOHL, Cincinnati, Ohio, for Defendants.

---

[*]The Honorable Harold A. Ackerman, United States District Judge for the District of New Jersey, sitting by designation.

Terry M. Cushing, Randy W. Ream, ASSISTANT UNITED STATES ATTORNEYS, Louisville, Kentucky, for Plaintiff.

---

## OPINION

---

RONALD LEE GILMAN, Circuit Judge. KenAmerican Resources, Inc. (the operator of a Kentucky coal mine), mine superintendents Bobby Gibson and William Mallicoat, and mine foremen Andrew Hickerson and Kenneth Tucker were indicted for conspiracy, making false statements to a federal agency, concealing material facts from a federal agency, and violating the Mine Safety and Health Act (MSHA), 30 U.S.C. §§ 801-25. After they were convicted by a jury, the district court imposed varying sentences on the five defendants. It also granted the defendants' motions to arrest judgment and for judgment of acquittal on Count 28 and part of Count 1, but rejected a number of other challenges to both the convictions and the sentences. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

### I. BACKGROUND

In May of 2002, a grand jury returned a 28-count indictment against KenAmerican for improper ventilation practices and the illegal use of two continuous mining machines (CMMs) at its Paradise No. 9 coal mine in Muhlenberg County, Kentucky. The indictment also named mine superintendents Gibson and Mallicoat, as well as mine foremen Hickerson and Tucker. Specifically, the indictment charged the defendants with conspiracy, making false statements to a federal agency, concealing material facts from a federal agency, and violating the MSHA.

A jury convicted the defendants on all counts relevant to this appeal. After trial, the defendants filed motions to arrest judgment, for a new trial, and for a judgment of acquittal. The district court granted the defendants' motions to arrest judgment and for acquittal on Count 28, which charged the defendants with concealing "the existence of willful violations of the MSHA." It also granted the defendants' motions for a judgment of acquittal on "that portion of Count 1 which charges Defendants with conspiracy to commit the crime of concealing a material fact by trick, scheme, or device."

At sentencing, the government requested a number of upward adjustments for each of the defendants. First, it asked the district court to increase KenAmerican's culpability score and Gibson's offense level because the crime involved "the conscious or reckless risk of death or serious bodily injury." United States Sentencing Commission, *Guidelines Manual* (USSG), § 2B1.1(b)(11). The court, however, refused to do so, reasoning that the defendants had not intended to place the miners at risk of death or serious bodily injury.

Second, the government requested an upward adjustment of Hickerson's, Mallicoat's, and Tucker's offense levels based on their role in the crimes. Again the district court refused the enhancement. The court determined that increasing the sentences for the individual defendants' aggravating roles in the offense would constitute double counting. It explained that, because only "operators" can be charged with violating mine safety laws, the base offense level already reflected the leadership roles of the individual defendants.

Third, the government requested that the district court increase Gibson's offense level because Gibson had lied to the MSHA inspectors about the status of one of the CMMs. The court refused to do so, noting that Gibson's statements did not "significantly obstruct[] or impede[] the official investigation or prosecution of the instant offense."

In the end, the district court sentenced Gibson and Mallicoat to two years' probation with a special condition of six months of home detention, imposed a $5,000 fine, and required them to pay the costs of electronic monitoring. Gibson was also ordered to pay the cost of the first year of supervision. The court sentenced Hickerson and Tucker to two years' probation with a special condition of four months' home detention, imposed a $3,000 fine, and required them to pay the costs of electronic monitoring.

KenAmerican was ordered to a pay fine of $306,000. Against the wishes of the government, the district court decided not to base the amount of the fine on a calculation of KenAmerican's pecuniary gain resulting from its illegal conduct. The court determined that, even though KenAmerican had profited from its illegal activity, determining the precise amount of the gain would unduly complicate and prolong the sentencing process. Instead, the court imposed a fine derived from the Offense Level Fine Table promulgated in Sentencing Guidelines § 8C2.4.

The government also requested that KenAmerican's culpability score be increased on the ground that KenAmerican had acted intentionally and obstructed justice. Although the district court declined to impose an increase on this basis, it did depart upward pursuant to Sentencing Guidelines § 8C4.2 because of KenAmerican's reckless conduct in disregarding mandatory health and safety standards. It determined that, with an offense level of 14 and a culpability score of 9, the appropriate fine was between $153,000 and $306,000. The court then sentenced KenAmerican to pay the maximum fine of $306,000.

On appeal, the government argues that the district court erred in granting the defendants' motions to arrest judgment and for judgment of acquittal on Counts 28 and part of Count 1. It also raises a number of issues related to the defendants' sentences. The defendants cross-appeal, arguing that the district court erred in not granting their motions for judgment of acquittal and/or to dismiss on many of the remaining counts. None of the defendants, however, contest their sentences in the event that we sustain the counts on which they were convicted.

## II. ANALYSIS

### A.    The district court did not err in determining that Count 28 failed to allege an offense

The district court granted KenAmerican's, Gibson's, and Mallicoat's motions to arrest judgment on the grounds that Count 28 of the indictment did not allege an offense. Count 28 alleges that the defendants

> did knowingly and willfully conceal, and cover up a material fact by trick, scheme, and device in a matter within the jurisdiction of the Executive Branch of the United States, that is, MSHA, in that the defendants alerted mine personnel on the working face of Paradise #9 mine that MSHA inspectors had entered mine property and would be inspecting the mine face and that the defendants did thereby conceal and cover up from MSHA the existence of willful violations of the Act.

### 1.    *Standard of review*

The sufficiency of an indictment is reviewed de novo. *United States v. Gatewood*, 173 F.3d 983, 986 (6th Cir. 1999). We must arrest judgment if the indictment does not charge an offense. Fed. R. Crim. P. 34(a). When a challenge to an indictment is brought for the first time after the defendant has been convicted, the indictment is "construed liberally in favor of its sufficiency." *United States v. Gibson*, 513 F.2d 978, 979 (6th Cir. 1975).

### 2.     *Allegation of an offense*

Pursuant to 18 U.S.C. § 1001(a),

> whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully—
> (1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact;
> (2) makes any materially false, fictitious, or fraudulent statement or representation; or
> (3) makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry [shall be fined, imprisoned, or both.]

The district court held in this case that Count 28 did not charge an offense under § 1001 because the defendants' duty to disclose material facts does not apply to the disclosure of willful violations of the Act. Instead, it applies only to the disclosure of hazardous conditions. *See* 30 C.F.R. § 75.363(b) ("A record shall be made of any hazardous condition found. This record shall be kept in a book maintained for this purpose on the surface at the mine. . . . This record shall not be required for shifts when no hazardous conditions are found . . . ."). Because the indictment charged that the defendants had concealed the existence of violations of the Act rather than of hazardous conditions, the district court granted the defendants' motion to arrest judgment.

We find no merit in the government's argument that the indictment was read too narrowly by the district court. An essential element of a violation of 18 U.S.C. § 1001 is that the defendants had a duty to disclose the particular information allegedly concealed from the government. *United States v. Zalman*, 870 F.2d 1047, 1055 (6th Cir. 1989) (holding that the duty to disclose under § 1001 is a matter of law for the judge, rather than the jury, to decide). As the district court instructed the jury in the present case, "[t]he law does not require the reporting of violations, nor does it require the reporting of violations which might become hazardous conditions. The law requires only the reporting of current hazardous conditions." *See Nat'l Mining Ass'n v. Mine Safety & Health Admin.*, 116 F.3d 520, 539 (D.C. Cir. 1997) (noting that "[t]he Secretary properly emphasizes that[,] because the purpose of the examination is to identify current hazardous conditions, requiring reporting of all instances of noncompliance with safety and health standards could distract examiners from the primary focus of their task, and lessen the efficiency of examinations"). Because the indictment does not distinguish between hazardous conditions and willful violations—and in fact does not even mention the disclosure of hazardous conditions—it does not charge an offense under § 1001. The district court therefore did not err in arresting judgment on Count 28.

**B.     The district court did not err in granting the defendants' motion for a judgment of acquittal on Count 28 and part of Count 1**

In addition to their motions to arrest judgment, the defendants also moved for a judgment of acquittal on Count 28, as well as on the portion of Count 1 that alleges a conspiracy to conceal a material fact. These motions were granted by the district court.

### 1.     *Standard of review*

The standard for determining whether a motion for a judgment of acquittal should be granted is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."

*United States v. Landham*, 251 F.3d 1072, 1083 (6th Cir. 2001) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)) (emphasis in original).

### 2.    *Motions for acquittal*

Because we agree that Count 28 failed to charge an offense, we need not reach the merits of the defendants' motions for a judgment of acquittal on that count. But even if the district court erred in arresting judgment, it properly granted the motions for a judgment of acquittal on Count 28 and part of Count 1. Conviction on a 28 U.S.C. § 1001 concealment charge requires a showing that the "defendant had a legal duty to disclose the facts at the time he was alleged to have concealed them." *United States v. Curran*, 20 F.3d 560, 566 (3d Cir. 1994). Pursuant to the mining regulations, the defendants here had a duty to disclose hazardous conditions on written reports at certain times during a shift, not to orally communicate the existence of hazardous conditions to MSHA inspectors upon their arrival at the mine. *See* 30 C.F.R. § 75.360(f) (establishing a duty to record the results of each pre-shift examination, including the existence of hazardous conditions and their locations); 30 C.F.R. § 75.363 (establishing a duty to post notices and keep records of hazardous conditions).

The government's proof that the defendants had committed a violation of 18 U.S.C. § 1001 consisted of evidence that the defendants had notified the miners working below ground of the MSHA inspectors' arrival at the mine, thereby allowing the miners time to rectify any potentially hazardous conditions prior to inspection. But the regulations are limited to requiring those individual miners who are certified to conduct investigations to report hazardous conditions in periodic written reports. The purpose of the pre-shift and on-shift reports is to facilitate communication among employees who are beginning and ending their shifts regarding hazardous conditions in the mine. *See Nat'l Mining Ass'n v. Mine Safety & Health Admin.*, 116 F.3d 520, 539-40 (D.C. Cir. 1997). They are not intended to be a mechanism to report "violations of mandatory standards." *Id.* at 539. The government failed to establish that the defendants found but did not disclose hazardous conditions during their pre-shift and on-shift examinations. Rather, it essentially alleged that, by preventing the safety inspectors from observing the actual working conditions in the mine, the defendants failed to disclose willful violations of the MSHA (or, more precisely, the defendants failed to allow the safety inspectors to discover the violations on their own). Such "disclosure," however, is not required by the regulations.

The government argues that the district court's reliance on *Curran* is misplaced. In *Curran*, the Third Circuit reversed the defendant's conviction for failing to disclose facts pertaining to political donations because the defendant, a coal company executive who had solicited employees to make illegal campaign contributions, had no duty to disclose to federal authorities the names of the contributors. 20 F.3d at 567. The government's contention is unpersuasive. Although *Curran* is distinguishable on its specific facts, it stands for the legal proposition that 18 U.S.C. § 1001 is not violated unless there is a duty to disclose the concealed facts. *Id.*

As a final point on the issue of the defendants' duty under the Act, we note that the defendants were convicted on Count 27 of the indictment. Count 27 charged them with giving "advance notice of inspections to be conducted by MSHA at Paradise #9 mine" in violation of 30 U.S.C. § 820(e). According to the indictment, Gibson, Mallicoat, and Tucker "alerted mine personnel on the working face of Paradise #9 mine that MSHA inspectors had entered mine property and would be inspecting the underground working face, so that corrections in working conditions could be effected." The alleged violations by the defendants of their duty to report hazardous conditions in pre-shift and on-shift written reports, charged in Counts 1 and 28, are entirely independent of the violations charged in Count 27. By stretching the duty to report hazardous conditions to include a duty to refrain from providing advance notice of impending inspections, the government is attempting to punish the defendants again for conduct for which they have already been convicted.

**C.      The district court properly concluded that the reference to "hazardous conditions" was not unconstitutionally vague**

KenAmerican also argues that the term "hazardous conditions" found in 30 C.F.R. § 75.360(a) is unconstitutionally vague because it does not "incorporate[] a high level of definiteness." *Belle Maer Harbor v. Charter Township of Harrison*, 170 F.3d 553, 557 (6th Cir. 1999). Because the regulation does not define "hazardous conditions," KenAmerican challenges its conviction under the portion of Count 1 that charged it with making false statements in a matter within the jurisdiction of the MSHA.

KenAmerican correctly notes that, to be facially valid, a criminal standard must "define the proscribed behavior with sufficient particularity to provide a person of ordinary intelligence with reasonable notice of prohibited conduct and to encourage non-arbitrary enforcement of the provision." *Id.* at 556; *see also M. Kraus & Bros. v. United States*, 327 U.S. 614, 626 (1946) ("[A] criminal conviction ought not to rest upon an interpretation reached by the use of policy judgments rather than by the inexorable command of relevant language.").

But KenAmerican was convicted of violating 18 U.S.C. § 1001(a), not 30 C.F.R. § 75.360. The criminal statute provides that "whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully . . . makes any materially false, fictitious, or fraudulent statement or representation . . . shall be fined under this title, imprisoned not more than 5 years or . . . both." 18 U.S.C. § 1001(a). Such language is not so indefinite as to be void for vagueness.

Moreover, the appropriate standard for determining whether 30 C.F.R. § 75.360 is unconstitutionally vague is whether it is understandable to an experienced company mine examiner for whom the regulations were written. *See Grayned v. City of Rockford*, 408 U.S. 104, 108, 112 (1972) (holding that a city's antinoise ordinance that proscribed "the making of any noise or diversion which disturbs or tends to disturb the peace or good order of such school session or class thereof" was not unconstitutionally vague because, given its "particular context," the ordinance gave "fair notice to those to whom (it) [was] directed") (quoting *Am. Communications Ass'n v. Douds*, 339 U.S. 382, 412 (1950)). Whether the regulation in question here is understandable to the average person is not the issue. As the district court pointed out, although the regulations do not define "hazardous conditions," they do give certified mine examiners sufficient guidance to prevent the reference to hazardous conditions from being unconstitutionally vague.

**D.      The district court did not err in concluding that there was sufficient evidence to support the convictions on Counts 1-4, 7, and 10 of the indictment**

The defendants also challenge their convictions on the remaining counts at issue in this appeal, arguing that there was insufficient evidence to support a guilty verdict. They therefore claim that the district court should have granted their motions for a judgment of acquittal and/or for dismissal on these claims.

   *1.      Standard of review*

In evaluating a claim that the evidence presented at trial was insufficient to support a conviction, we must "view the evidence in the light most favorable to the government." *United States v. Stonefish*, 402 F.3d 691, 695 (6th Cir. 2005) (quoting *United States v. Morrow*, 977 F.2d 222, 230 (6th Cir. 1992)). We "will affirm the jury's verdict unless no rational trier of fact could have found, beyond a reasonable doubt, that [the defendants] committed the offenses charged." *Id.*

### 2.      *Count 1*

Count 1 alleges a conspiracy to commit three separate crimes.  First, as discussed in Part II.B.2. above, it alleges a conspiracy to conceal a material fact by trick, scheme, or device.  The second crime alleged is a conspiracy to knowingly authorize, order, or carry out the willful violation of mandatory health and safety standards.  Finally, Count 1 alleges a conspiracy to make false statements in a matter within the jurisdiction of the government.

Mallicoat argues that there was insufficient proof to establish that he committed an overt act for the purpose of advancing this alleged conspiracy.  The jury, however, found that Mallicoat committed alleged overt act #6 in furtherance of the conspiracy; namely, that he and the other defendants

> were present on the working face of Paradise #9 mine and observed that the ventilation curtains were not present within ten feet of the bumper of the continuous mining machine while coal was being extracted and were not being used to provide ventilation to the working face,  and failed to cease production and correct or direct the correction of these violations.

At trial, witnesses testified to the fact that curtains were down throughout the mine and therefore were not within ten feet of the bumper of the CMM.  They also testified as to the fact that there was insufficient ventilation in the mine.  As a result, the jury's finding that Mallicoat committed an overt act in furtherance of the conspiracy was supported by sufficient evidence.

 KenAmerican and Gibson also argue that there was insufficient evidence for a jury to convict them of making false statements as alleged in Count 1.  The jury, however, heard testimony that Gibson told employees not to mention in their pre-shift and on-shift reports that the ventilation curtains were down.  Other witnesses testified that, even though hazardous conditions were frequently observed at the mine, these conditions were rarely included in the reports.  This evidence was sufficient for the jury to conclude that KenAmerican and Gibson were guilty of a conspiracy to make false statements as charged in Count 1.

KenAmerican further argues that a judgment of acquittal on Count 1 is appropriate because the jury's conviction might have been based on an act undertaken outside of the statute of limitations, which is five years.  *See United States v. Craft*, 105 F.3d 1123, 1127 (6th Cir. 1997) ("The statute of limitations period for section 371 is five years, which period runs from the date of the commission of the last overt act in furtherance of the conspiracy.").  To convict KenAmerican, the jury was required to find that the corporation committed an overt act on or after May 8, 1997, five years before the government issued its indictment.  Although the jury did not specify the acts upon which it convicted KenAmerican, there was ample evidence that the defendants violated the MSHA well beyond May 8, 1997.  The failure to instruct the jury that it must find that an overt act was committed within the statute of limitations period therefore had no "substantial and injurious effect or influence on the verdict." *Hardaway v. Withrow*, 305 F.3d 558, 565 (6th Cir. 2002).  Any error on the part of the district court was thus harmless.

### 3.      *Counts 2-4, 7, and 10*

Finally, Mallicoat argues that he should have been granted a judgment of acquittal on Counts 2, 3, and 4, which charged the defendants with authorizing, ordering, and carrying out violations of mandatory health and safety standards. Mallicoat contends that there was insufficient evidence to support a conviction on these counts.  Similarly, KenAmerican, Hickerson, and Tucker argue that the district court should have granted their motion to dismiss Counts 4, 7, and 10, which charge them

with authorizing, ordering, and carrying out the violation of the mining regulation that requires the mine operator to adopt and follow a ventilation plan. KenAmerican contends that there was no proof of such a violation or that any of the defendants authorized the same.

These arguments are all without merit. The testimony of Paul Griffin, properly introduced as an admission of a party-opponent, *see* Part II.E. below, supports Mallicoat's conviction on Count 2. With respect to the other contested counts, mine superintendents or foremen can be said to have knowingly authorized, ordered, or carried out violations of the MSHA when they enter mines and observe violations but do nothing to stop or correct them. *See Allied Prods. Co. v. Fed. Mine Safety & Health Review Comm'n*, 666 F.2d 890, 893 (5th Cir. Unit B 1982) (affirming civil penalties against a mining company for violating the MSHA and explaining that "it is a common regulatory practice to impose a kind of strict liability on the employer as an incentive for him to take all practicable measures to ensure the workers' safety"). KenAmerican argues that "observation of a violation does not equal authorization," but the Fifth Circuit in *Allied Products* has held that "[i]f the act or its regulations are violated, it is irrelevant whose act precipitated the violation . . . ; the operator is liable." *Id.* at 894. We agree. The district court therefore did not err in sustaining the convictions under Counts 2-4, 7, and 10.

## E.     The district court did not err in admitting testimony that was allegedly double hearsay

During the trial, the district court admitted testimony by the government's witness, Paul Griffin, regarding conversations that he claimed to have had with Gibson. According to Griffin's testimony, Mallicoat had told Gibson that KenAmerican was going to simultaneously operate two CMMs at the Paradise No. 9 mine, and Gibson repeated this to Griffin. Such an operation would be in violation of 30 C.F.R. §75.332(a)(2), which prohibits two CMMs from "simultaneously . . . cutting, mining, or loading coal or rock from working places within the same working section" unless each CMM is "on a separate split of intake air."

The district court allowed Griffin's testimony as an admission by a party-opponent. *See* Fed. R. Evid. 801(d)(2). Despite the defendant's objection that the testimony constituted inadmissible double hearsay, the court reasoned that both Gibson's and Mallicoat's statements were those of party-opponents and were therefore admissible. KenAmerican, Griffin, and Mallicoat now argue that the admission of Griffin's testimony violated both the hearsay rule and their rights under the Confrontation Clause of the Sixth Amendment.

### 1.     *Standard of review*

We review evidentiary rulings by the district court, including alleged violations of the hearsay rule, under the abuse-of-discretion standard. *Trepel v. Roadway Express, Inc*., 194 F.3d 708, 716 (6th Cir. 1999) (citing *Gen. Elec. Co. v. Joiner*, 522 U.S.136, 141 (1997)). *But see Field v. Trigg County Hosp., Inc.*, 386 F.3d 729, 735 (6th Cir. 2004) ("[W]e review de novo a district court's conclusions of law, such as in this case, whether evidence offered at trial constituted hearsay within the meaning of the Federal Rules of Evidence.") (citing *Hancock v. Dodson*, 958 F.2d 1367, 1371 (6th Cir. 1992)). But where the evidentiary issues relate to a claimed violation of the Sixth Amendment, we review rulings of the district court de novo. *United States v. Robinson*, 389 F.3d 582, 592 (6th Cir. 2004).

### 2.     *Hearsay*

With regard to any violation of the hearsay rule, the district court properly concluded that the statements were admissible as statements by a party-opponent. This court held in *Estate of Shafer v. Commissioner*, 749 F.2d 1216, 1220 (6th Cir. 1984), that, in order for double-hearsay

statements to be admissible, both statements must be excluded from the hearsay definition. *See* Fed. R. Evid. 805 ("Hearsay included within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule provided in these rules."). As in *Estate of Shafer*, both statements here were deemed party admissions within the scope of Rule 801(d)(2)(A) and were therefore admissible.

### 3.      *Sixth Amendment*

With regard to the alleged Sixth Amendment violation, the defendants argue for the first time on appeal that the admission of Griffin's testimony violated their rights under the Confrontation Clause. This court has held that Confrontation Clause arguments not first presented to the district court will typically not be heard on appeal. *See United States v. Bingham*, 81 F.3d 617, 630 (6th Cir. 1996) (declining to consider a Confrontation Clause argument because, among other reasons, it was not raised in the district court). We recognize, however, that "this general rule is one of prudence rather than a limitation on this court's jurisdiction." *United States v. Hayes*, 218 F.3d 615, 621 (6th Cir. 2000). As a matter within our discretion, we will review the merits of the defendants' argument because the potential impact of the Supreme Court's recent decision in *Crawford v. Washington*, 541 U.S. 36 (2004), bears examination.

The Supreme Court has held that the admission of statements by a nontestifying codefendant that implicate the accused are presumptively unreliable and thus in violation of the Confrontation Clause. *Bruton v. United States*, 391 U.S. 123, 126 (1968) (holding that the admission of a codefendant's confession that implicated the defendant at their joint trial constituted prejudicial error); *see also Bulls v. Jones*, 274 F.3d 329, 334 (6th Cir. 2001) (holding that the admission of statements by a nontestifying codefendant violated the Confrontation Clause). But hearsay statements may be constitutionally admissible despite a defendant's inability to confront the declarant at trial where "(1) the evidence falls within a firmly rooted hearsay exception or (2) it contains particularized guarantees of trustworthiness such that adversarial testing would be expected to add little, if anything, to the statements' reliability." *Lilly v. Virginia*, 527 U.S. 116, 124-25 (1999) (quotation marks omitted). At least one other circuit has explicitly held that admissions by a party-opponent are not firmly rooted exceptions to the hearsay rule. *See Gonzales v. Fairman*, 49 Fed. Appx. 97, 99 (9th Cir. 2002) (unpublished) (citing *Lilly*, 527 U.S. at 126-30); *see also United States v. Chappell*, 698 F.2d 308, 312 (7th Cir. 1983) ("The exclusion of party admissions from the definition of hearsay, unlike most hearsay exceptions, is not grounded on a probability of trustworthiness but rather on the idea that a party cannot object to his failure to cross-examine himself.").

Here, however, Griffin's testimony was admissible because it bore "particularized guarantees of trustworthiness." *Lilly*, 527 U.S. at 125. Gibson's statements were not made to the police or in the course of an official investigation. Nor was Gibson attempting to curry favor or shift the blame from himself to Mallicoat. *See Latine v. Mann*, 25 F.3d 1162, 1167 (2d Cir. 1994) ("The admission of such a statement may not violate the Confrontation Clause, however, if the declarant makes the statement to someone he believes is an ally, and if the circumstances surrounding the portion of the statement that inculpates the defendant provide no reason to suspect that [the] inculpatory portion is any less trustworthy than the part of the statement that directly incriminates the declarant.") (quotation marks omitted).

The defendants also cite *Crawford v. Washington*, 541 U.S. 36, 61 (2004), as support for their contention that "[a]dmitting statements deemed reliable by a judge is fundamentally at odds with the right of confrontation." In *Crawford*, the Supreme Court held that admitting out-of-court testimonial statements in a criminal trial violates the Confrontation Clause. *Id.* But *Crawford* dealt only with testimonial statements and did not disturb the rule that nontestimonial statements are

constitutionally admissible if they bear independent guarantees of trustworthiness. *See id.* at 51 (distinguishing between testimonial statements, such as the formal statements made by an accuser to a government officer, and nontestimonial statements, such as a casual remark made to an acquaintance). We therefore conclude that the admission of Griffin's testimony did not violate the defendants' rights under the Confrontation Clause.

**F.      The district court did not err in refusing to increase the defendants' offense levels based upon allegations regarding the conscious or reckless risk of death or serious bodily harm**

The government next argues that the district court erred in refusing to adjust the defendants' offense levels upward pursuant to Sentencing Guidelines § 2B1.1(b)(11) (now § 2B1.1(b)(12)), which allows the court to enhance a sentence if the offense involved "the conscious or reckless risk of death or serious bodily injury."

### 1.      Standard of review

We review de novo a district court's interpretation of the Sentencing Guidelines. *United States v. Hazelwood*, 398 F.3d 792, 795, 800-01 (6th Cir. 2005). Once we conclude that the district court has properly consulted the Sentencing Guidelines, we review the sentence for reasonableness. *See United States v. Booker*, 125 S. Ct. 738, 765-67 (2005).

### 2.      Hickerson, Mallicoat, and Tucker

The government's argument with respect to Hickerson, Mallicoat, and Tucker is based on the premise that the district court should have applied the fraud guidelines in § 2B1.1 rather than the regulatory guidelines in § 2N2.1. But where a specific Sentencing Guideline does not exist for an offense, the district court must choose an analogous Guideline to apply in determining the defendant's sentence. *United States v. Gray*, 982 F.2d 1020, 1021 (6th Cir. 1993). "[T]he choice of the best analogy is likely to depend in part on the circumstances. Once the circumstances are determined, the district court's choice of an analogy should be upheld if it is reasonable." *United States v. Brady* 168 F.3d 574, 577 (1st Cir. 1999) (citations omitted).

Here, the district court determined that the offenses committed by Hickerson, Mallicoat, and Tucker were violations of regulations involving mandatory health and safety standards, and therefore were analogous to the violations of statutes and regulations dealing with food and drugs that are addressed in Sentencing Guidelines § 2N2.1. It also noted that "[t]his guideline assumes a regulatory offense that involved knowing or reckless conduct" (quoting USSG § 2N2.1, comment. (n.1)) and concluded that "that at least fits here to a certain extent." The court explicitly rejected the application of Sentencing Guidelines § 2B1.1 because the offenses of these defendants did not involve fraud.

We conclude that the district court's determination that the applicable Sentencing Guideline was § 2N2.1, not § 2B1.1, was reasonable. Because § 2N2.1 makes no provision for an upward adjustment based on conscious or reckless risk of death or serious bodily injury, the court did not err in refusing to increase the sentences of Hickerson, Mallicoat, and Tucker.

### 3.      Gibson and KenAmerican

With respect to the sentences of Gibson and KenAmerican, who were convicted of a conspiracy to make false statements, however, the district court properly applied Sentencing Guidelines § 2B1.1, which addresses fraud offenses. The court noted that § 2B1.1(b)(11), unlike Sentencing Guidelines § 2N2.1, permits an enhancement based upon the risk of death or serious

bodily injury.  But the district judge refused to impose the enhancement, concluding that "I don't think [the defendants] intended to put the people that worked under them at risk."

Section 2X1.1(a) of the Sentencing Guidelines, which deals with conspiracy offenses, states that the court should  apply adjustments from the substantive Guideline, here § 2B1.1, only "for any intended offense conduct that can be established with reasonable certainty."  In our opinion, the district court correctly determined that this language required the government to prove that Gibson and KenAmerican intended to create the risk of death or serious bodily injury.  *See United States v. Holmes*, 975 F.2d 275, 282 (6th Cir. 1992) (holding that, for an enhancement under § 2X1.1(a), the defendant must have intended the conduct).

The government contends, however, that it is not required to make such a showing.  Instead, the government claims that it is required to prove only that the defendants intended to commit the underlying conduct; namely, running two CMMs simultaneously and failing to adequately ventilate the mine face.  But it offers no support for this interpretation of § 2X1.1(a).  We therefore hold that the district court properly refused to apply the adjustment in Sentencing Guidelines § 2B1.1(b)(11).

**G.      The district court did not err in refusing to increase the individual defendants' offense levels based upon their role in the offense**

The government also requested that the district court adjust the individual defendants' offense levels to reflect their roles in the offense.  Under Sentencing Guidelines § 3B1.1, a four-level enhancement is warranted "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive."  But the court refused to impose such an enhancement, reasoning that only "operators" could be convicted of violating the MSHA. It determined that imposing an adjustment based on the defendants' leadership role would therefore constitute double counting because the base offense level already reflected the defendants' roles in the offense.

Double counting occurs where "precisely the same aspect of a defendant's conduct factors into his sentence in two separate ways."  *United States v. Farrow*, 198 F.3d 179, 193 (6th Cir. 1999). The district court cited *United States v. Stevenson*, 6 F.3d 1262 (7th Cir. 1993), as support for its conclusion that "the crime of conviction already encompasses the leadership role."  *See id.* at 1270. In *Stevenson*, the Seventh Circuit held that a defendant who was convicted of employing, hiring, persuading, or inducing a minor to participate in a crime in an effort to avoid detection of that crime had necessarily assumed a "control role" in the offense.  The court concluded that imposing a sentence "based upon both recruiting a minor and for the appellant's leadership role [amounted to] 'double counting'" and was therefore impermissible.  *Id.*

The government argues that double counting was not an issue here because the defendants' leadership roles did not factor into their sentences in any other way.  According to the government, even though the MSHA applies only to operators, the applicable Sentencing Guidelines are not limited to operators because neither § 2B1.1 nor § 2N2.1 account for a defendant's aggravating role in the offense.  The government attempts to distinguish *Stevenson* from the present case by arguing that the Sentencing Guideline at issue in *Stevenson* was written expressly for the violation of employing a minor in a drug crime, whereas there is no Guideline that expressly deals with the MSHA.

We do not find the government's arguments persuasive.  Instead, we agree with the district court that *Stevenson* is closely analogous to the present case.  Had the district court applied an upward departure, the defendants' roles as operators would have factored into their sentences in two ways.  Their operator status would first have been relevant in establishing their base offense level.

Because only operators can be convicted of violating the MSHA, the base offense level does in fact take into account their leadership roles. Second, their operator status would have factored into their sentences by applying the enhancement. An upward departure would therefore have resulted in the defendants' sentences being enhanced based on the same elements that resulted in their offense of conviction. *See Stevenson*, 6 F.3d at 1270.

We agree with the Seventh Circuit that "[s]uch a result defeats the purpose of adjustments: providing for increased responsibility beyond that reflected in the offense of conviction." *Id. See also Farrow*, 198 F.3d at 193-94 ("If a single aspect of the defendant's conduct both determines his offense level and triggers an enhancement, this defendant's final offense level will be the same as that of a defendant who engages in *two* forms of conduct deemed punishable under the Sentencing Guidelines. Such an assignment of equal offense levels for conduct of differing severities undermines the Guidelines' goal of proportionality in sentencing.") (emphasis in original) (footnote omitted). The district court therefore did not err in refusing to apply the enhancement.

**H.      The district court did not err in refusing to adjust Gibson's offense level or KenAmerican's culpability score to reflect their alleged obstruction of justice**

The Sentencing Guidelines allow for a two-level increase in a defendant's offense level if the defendant "willfully obstructed or impeded . . . the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction." USSG § 3C1.1. Moreover, the Sentencing Guidelines provide the following enhancement of a corporation's culpability score based on an obstruction of justice:

> If the organization willfully obstructed or impeded . . . justice during the investigation, prosecution, or sentencing of the instant offense, or, with knowledge thereof, failed to take reasonable steps to prevent such obstruction[,] . . . add 3 points.

USSG § 8C2.5(e).

At sentencing, the government argued that the district court should apply this adjustment to reflect the fact that KenAmerican had warned its miners of the inspections and falsified its pre-shift and on-shift reports. It also requested that the district court increase Gibson's offense level because he had lied to MSHA inspectors about the status of one of the CMMs. But the court refused to apply the adjustment, reasoning that neither Gibson's nor KenAmerican's obstructive conduct occurred during "the investigation of the instant offense."

### 1.      *Standard of review*

The district court's factual findings in refusing to adjust a culpability score for obstruction of justice will not be set aside unless they are clearly erroneous. *See United States v. Burke*, 345 F.3d 416, 428 (6th Cir. 2003). We review de novo the district court's legal conclusions regarding any such adjustment. *Id.*

### 2.      *Obstruction of justice*

The district court's conclusion that Gibson's and KenAmerican's obstructive conduct did not occur during "the investigation of the instant offense" is erroneous, because this court has applied the obstruction adjustment when the defendant's "action was intended to impede the same government investigation that eventually resulted in [the defendant's] conviction." *Burke*, 345 F.3d at 430. Despite this error, however, the district court's refusal to apply the enhancement was proper because Application Note 5 to Sentencing Guidelines § 3C1.1 states that conduct such as avoiding

arrest, providing incomplete or misleading information, or even making false statements to federal officers does not warrant application of the adjustment. Application Note 4, on the other hand, details the type of conduct that *is* contemplated by the enhancement. The examples provided include threatening a co-defendant, juror, or witness; committing perjury; destroying material evidence; and escaping from custody. This suggests that the adjustment is meant to address more egregious behavior than that at issue here. We therefore conclude that the district court did not err in failing to increase Gibson's or KenAmerican's sentences based upon obstruction of justice.

**I.     The district court did not err in refusing to consider KenAmenican's pecuniary gain resulting from the company's illegal conduct in determining the sentence**

The Criminal Justice Act of 1984 provides that "[i]f any person derives pecuniary gain from the offense, . . . the defendant may be fined not more than the greater of twice the gross gain or twice the gross loss, *unless imposition of a fine under this subsection would unduly complicate or prolong the sentencing process.*" 18 U.S.C. § 3571(d) (emphasis added). Despite the fact that the government attempted to introduce evidence regarding KenAmerican's pecuniary gain, the district court refused to hear the proffered testimony, explaining that "[m]y feeling right now is that the corporation probably realized some gain. The real difficulty is how much." The district court agreed with the recommendation of the probation department that "there's no defensible methodology to use in calculating the gain with any reasonable certainty." Instead, the court used the Offense Level Fine Table found in the Sentencing Guidelines and considered KenAmerican's indeterminate profits as a result of its activities in departing upward from the base fine.

### 1.     *Standard of review*

We review the district court's imposition of fines under the Criminal Justice Act under the abuse-of-discretion standard. *See United States v. Monus*, 128 F.3d 376, 398 (6th Cir. 1998).

### 2.     *Pecuniary gain*

The government contends that the district court erred in refusing to hear the testimony of seven witnesses regarding KenAmerican's pecuniary gain before imposing the sentence. But the district court did recognize that KenAmerican had profited to some extent and took this gain into account in deciding whether to depart upward from the base fine. Moreover, it articulated a legitimate reason for its refusal to hear the government's proffered witnesses: "I might be here for a long time and still have lots of questions about the amount, and I'd been engaging in speculation and guesswork, . . . and certainly I think it's going to complicate matters, and it's going to prolong this sentencing." We therefore conclude that the district court's refusal to hear the testimony, a decision supported by the Presentence Report prepared by the probation office, was not an abuse of its discretion.

## III.  CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.