NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued April 3, 2007
Decided May 1, 2007

**Before**

Hon. DANIEL A. MANION, *Circuit Judge*

Hon. TERENCE T. EVANS, *Circuit Judge*

Hon. ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 06-2484

| | |
|---|---|
| UNITED STATES OF AMERICA, | Appeal from the United States District |
| *Plaintiff-Appellee,* | Court for the Northern District of Illinois, Eastern Division. |
| *v.* | |
| | No. 05 CR 426 |
| ANGELINA LYLES, | |
| *Defendant-Appellant.* | Charles R. Norgle, Sr., *Judge.* |

**O R D E R**

Angelina Lyles argues on appeal that the district court's decision (Judge Charles R. Norgle, Sr., presiding) to deny her motion for continuance, filed on the eve of trial, violated her Sixth Amendment right to the counsel of her choice.

On May 10, 2005, a grand jury charged Lyles with four counts of making false representations to the DuPage Housing Authority in violation of 18 U.S.C. § 1001(a)(2). According to the indictment, Lyles lied in personal declarations supporting her applications for subsidized housing vouchers for low-income families on four separate occasions between September 2000 and February 2003.

Lyles came before Judge Norgle on May 18, 2005, for arraignment. She appeared without an attorney and asked for a continuance in order to hire one. Here (with our emphasis added) is what occurred.

The Court:      Are you Angelina Lyles?
Defendant:     Yes sir.
The Court:      Are you represented by an attorney?
Defendant:     Not at the moment, but I am going to get an attorney.
                        . . . .
The Court:      **Ms. Lyles, you're asking for a continuance to hire a lawyer?**
Defendant:     **Yes, sir.**
The Court:      **How much time do you need?**
Defendant:     **I need about a month or two months** . . . .
The Court:       . . . June 15th, 9:30 for arraignment. So when and if you hire an attorney, have your attorney here on June 15th at 9:30.
                        . . . .
                       [A]nd at that time, if you do not have an attorney with you, the court expects to appoint the Federal Defender.

On June 15, 2005 Lyles appeared for arraignment again, still without counsel:

The Court:      **The case was continued the last time you were before the Court on your request for additional time to hire an attorney. Have you hired an attorney?**
Defendant:     **No, Your Honor.**
The Court:      Do you have the financial ability to hire one?
Defendant:     No, I don't.
The Court:      The Court appoints the Federal Defender, and the matter will be continued for arraignment . . . . **If you decide along the way that you want to employ a private attorney, he or she may enter an appearance, and the Federal Defender would be granted leave to withdraw.** But to be sure that your rights are protected, the Court appoints counsel.

Judge Norgle appointed Eugene O'Malley as Lyles' attorney. She was arraigned on June 28, 2005, and entered a plea of not guilty. A history of missed appointments, contentious meetings, and strong disagreements about strategy developed between the pair as O'Malley

prepared the case.[1]  Both later agreed that communication had broken down between them. Despite this, Lyles did not take steps to hire a private attorney.  In fact, at a July 20, 2005, status hearing, Judge Norgle instructed her to "make sure you keep in touch with your attorney . . . ." Lyles responded "Okay" and made no mention about her strained relationship with O'Malley.

On September 28, 2005, another status hearing was held.  At this point, the judge learned that trouble was afoot.  O'Malley made a motion to withdraw, explaining, "There's been a lot of difficulty communicating.  My client and I are having -- we're not having effective communication judge."  He also noted that Lyles missed three appointments in the previous two weeks.  The judge then listened to extensive testimony about her complaints.  A sample of her side of the story:

> [E[very time I try to talk to him he doesn't want to listen to me.  And he  -
> - and I just found out he didn't want to represent me today.  You know,
> I'm hurt by this because every time I talk to him, he doesn't want to listen
> to me.  He doesn't -- he just -- we don't have communication.[2]

The judge refused to let O'Malley withdraw and set the trial for November 15, 2005, advising Lyles that "[t]he Court has appointed an attorney to represent you, to see to it that your rights were protected from the very beginning.  **And I believe that you were advised along the way that if you wanted to hire private counsel, certainly you would have the right and the opportunity to do that.**" (Emphasis added.)

But Lyles, again, did not hire private counsel.  She maintained the status quo for another month and a half until November 14, 2005, the day before trial, when she filed an "Emergency Motion for Appointment of New Counsel, to Stay, and Stop Current Criminal Proceedings, for at Least Thirty 30 Days While This Issue is Resolved."  The motion refers in passing to the Fifth, Sixth, Ninth, and Fourteenth Amendments.  Its primary focus, however, is a litany of complaints against O'Malley, including allegations that he violated a variety of the Illinois Rules of Professional Conduct and Rules of Criminal Procedure (as well as precedent supposedly set by the "Supreme Court" in State v. Langley, 839 P.2d 692, 700 (Or. 1992)--a case, of course, not remotely relevant).  The motion did not make an explicit request for time to hire new private counsel.

On the morning of November 15, Lyles' motion became the first order of business.  After testimony about the same types of communication problems revealed at the September hearing, the judge asked, "What ultimately are you asking me to do?"  She responded, "I'm asking you to grant me another 30 days to at least find another counsel, to raise money to find another attorney,

---

[1]  Lyles even lodged a formal complaint with the American Bar Association.

[2]  Despite the difficulties described at the hearing, O'Malley was able to prepare pretrial motions, filed on October 27, 2005, for discovery and to suppress evidence.

or to assign me another attorney, Your Honor." Judge Norgle denied the motion and the trial began the following day with O'Malley acting as Lyles' counsel. The jury found Lyles guilty on three of the four counts and she was sentenced to 3 months imprisonment, 3 years supervised release, and restitution payments to the United States Department of Housing and Urban Development of $17,901.

Lyles argues that the judge improperly denied her motion for continuance in violation of her Sixth Amendment right to the counsel of her choice. The amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence," and the Supreme Court has concluded that language encompasses a defendant's right to "choose who will represent him." United States v. Gonzales-Lopez, 126 S. Ct. 2557, 2561 (2006). The right is "not absolute," of course, and it "does not give an accused the power to manipulate his choice of counsel to delay the orderly progress of his case." United States v. Robinson, 20 F.3d 270, 275 (7th Cir. 1994) (citations omitted). Finally, before going any further we note that despite the extensive record documenting her troubles with O'Malley, Lyles has appealed only the denial of her request for additional time to find and hire a private attorney, not the court's refusal to appoint different counsel.

We examine the denial of a continuance that allegedly infringes the right to counsel of choice for an abuse of discretion. United States v. Santos, 201 F.3d 953, 958 (7th Cir. 2000); United States v. Vincent, 416 F.3d 593, 598 (7th Cir. 2005). The trial court's latitude in this area is especially broad. United States v. Stevenson, 6 F.3d 1262, 1265 (7th Cir. 1993) ("ordinarily the refusal of the trial court to grant a continuance is virtually unreviewable"); United States v. Egwaoje, 335 F.3d 579, 587-88 (7th Cir. 2003). There are no mechanical tests to determine whether a continuance should have been granted in a given case. Ungar v. Sarafite, 376 U.S. 575, 589 (1964). We analyze "the circumstances of the ruling and the reasons given by the judge for it." Santos, 201 F.3d at 958.

It would be an understatement to say that Lyles was tardy in exercising her Sixth Amendment right to engage counsel of her choice. She asked for more time to hire an attorney on May 18 (Court: "Ms. Lyles, you're asking for a continuance to hire a lawyer?" Lyles: "Yes, sir."), and Judge Norgle obliged with a nearly month-long extension. When she showed up lawyerless on June 15, the judge explicitly advised her that "[i]f you decide along the way that you want to employ a private attorney, he or she may enter an appearance . . . ." The scenario repeated itself at the September 28 status hearing--the court again reminded her that she had been advised she could hire a private attorney at any time.

But between May 18 and November 15, Lyles, for all her complaints about Mr. O'Malley, does not appear to have done much, if anything, to secure new counsel. This delay of more than 6 months poses a problem. As the Supreme Court recently noted, a defendant "should be afforded a fair opportunity to secure counsel of his own choice." Gonzalez-Lopez, 126 S. Ct. at 2561 (emphasis added) (quoting Powell v. Alabama, 287 U.S. 45, 53 (1932)).

Given his previous grants of extra time and Lyles' last-minute request, Judge Norgle was entitled to conclude that she had already been afforded a "fair opportunity" to find counsel of her choice and that she did not deserve a third or fourth chance to do so, especially when the third request came on the eve of trial. United States v. Carrera, 259 F.3d 818, 824 (7th Cir. 2001) (proper for court to deny motion when it was untimely filed shortly before trial and defendant could not name new counsel); United States v. Avery, 208 F.3d 597, 602 (7th Cir. 2000) (upholding refusal to grant continuance request made day before trial).[3]

Other circumstances supported the denial. The government was ready to try the case as scheduled, witnesses were prepared and available, and court time had been set aside. It would have been inconvenient to reschedule, and there was no indication that Lyles would be any more successful over the next 30 days at hiring a private attorney than she had been in the past 6 months. See United States v. Turk, 870 F.2d 1304, 1307 (7th Cir. 1989).

Admittedly, the case is not completely clear cut; some circumstances favored Lyles. For example, the government agreed to the motion, Judge Norgle mentioned no specific scheduling conflict, the witnesses were local and it would not have been difficult to call them back at a later time.

But Judge Norgle gave reasons for his ruling. After extensively questioning Lyles, he held that O'Malley had, in fact, done nothing wrong and was competently representing her. He concluded that her accusations against O'Malley were unfounded, and granting the motion might lead to unnecessary delays and "scurrilous attacks" on future attorneys. We think these findings are reasonable based on the record before us and thus that it was not an abuse of discretion for the judge to conclude that another continuance was not warranted. "The trial court is inevitably in a better position than an appellate court to evaluate the need and justification of additional time . . . ." Stevenson, 6 F.3d at 1265; see also Turk, 870 F.2d at 1307. Yet, when all is said and done, we think a better exercise of discretion by the judge would have been to give Lyles more time. But, given our deferential standard of review, we cannot conclude that Judge Norgle was so far off base here that his call must be overturned.

Finding no abuse of discretion here, we affirm the judgment of the district court.

---

[3] Indeed, "the right to counsel of one's choice may be waived if one able to afford counsel does not retain an attorney within a reasonable period of time." United States v. Thibodeaux, 758 F.2d 199, 201 (7th Cir. 1985).